**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-056S** |
| | : | |
| **TERRENCE GREENE** | : | |

**GOVERNMENT'S MOTION TO RECONSIDER**
**JANUARY 18, 2007 ORDER**

For the reasons stated in the accompanying memorandum of law, the government moves this Court to reconsider its order of January 18, 2007.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Donald C. Lockhart

DONALD C. LOCKHART
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
401-709-5000
401-709-5001 (fax)
donald.lockhart2@usdoj.gov

**CERTIFICATE OF SERVICE**

On this 24th day of January, 2007, I caused the within "Government's Motion to Reconsider January 18, 2007 Order" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Edward C. Roy, Esquire
Federal Public Defender's Office
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

Notification by first class mail, postage prepaid:

United States Probation Office
2 Exchange Terrace, 2nd Floor
Providence, Rhode Island 02903.

/s/ Donald C. Lockhart
DONALD C. LOCKHART
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
401-709-5000
401-709-5001 (fax)
donald.lockhart2@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-056S** |
| | : | |
| **TERRENCE GREENE** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER JANUARY 18, 2007 ORDER**

On January 18, 2007, this Court ordered the government "to provide [it with] an overview of the use of [21 U.S.C. § 851] filings from the point of Booker [i.e., January 12, 2005] to the present." (Transcript ("Tr.") 6.) Specifically, the Court ordered the government to produce, for this two-year period, information concerning: (1) "how many cases and which cases has the Government filed Section 851's"; (2) "how many cases, and which ones, has the Government had the ability to file 851's, but chose not to"; (3) with respect to both categories of cases, "the nature of those cases, the types of drugs involved, the quantities, et cetera," and whether there were "any plea agreements or not in those cases"; and (4) "any policy directives or reasons for the filing or decision not to file the 851's." (Tr. 6.)

The fourth aspect of the order could be read as requiring the government to disclose not just the general "policy directives" that guide the decision whether to file a § 851 information, but also the particular "reasons" why the government filed or did not file such an information in a specific case or group of cases. Related comments made by the Court could be read in the same light:

"I want to know what distinguishes one defendant from another defendant when it comes to the filing of these 851's. What's the qualitative distinction or judgment that the Government is making when it decides that one defendant is going to get an 851 and another defendant is not." (Tr. 7.) In referring to the government's § 851 charging practices, the Court also stated that it "want[ed] to know what's behind it all." (Tr. 7.)

In response to the Court's order, the government attaches the only relevant policy directive that it is aware of concerning § 851 charging decisions: a September 22, 2003 memorandum of Attorney General Ashcroft. The pertinent language is found on page 4. For the following reasons, however, the government respectfully asks the Court to reconsider the balance of its order.

In United States v. Armstrong, 517 U.S. 456 (1996), the Supreme Court struck down a district court order directing the government to produce the following information in response to a defense claim of selective prosecution: "(1) to provide a list of all cases from the last three years in which the Government charged both cocaine and firearms offenses, (2) to identify the race of the defendants in those cases, (3) to identify what levels of law enforcement were involved in the investigations of those cases, and (4) to explain the criteria for deciding to prosecute those defendants for federal cocaine offenses." Id. at 459. Observing that such orders "divert prosecutors' resources and may disclose

the Government's prosecutorial strategy," and that they may "impair the performance of a core executive constitutional function," the Court erected a "rigorous standard" for deciding whether they are justified in individual cases. Armstrong, 517 U.S. at 465, 468. The Court held that there must be at least "some evidence" that the contested charging decision was "discriminatory" in both "effect" and "intent." Id. at 468-69. The "effect" prong of the test requires a showing "of differential treatment of similarly situated members of other races or protected classes." Id. at 470; see also United States v. Magana, 127 F.3d 1, 8 (1st Cir. 1997) (applying Armstrong).

The Supreme Court has since made clear that Armstrong applies with equal force to government decisions concerning sentencing-related filings. In a case where the government filed a notice of intent to seek the death penalty, the Court summarily reversed an order requiring the government to produce information concerning its "capital charging practices," notwithstanding a claim of racial bias. United States v. Bass, 536 U.S. 862, 863 (2002) (per curiam). The Court reiterated that the government could be compelled to provide such information only upon a showing of "some evidence of both discriminatory effect and discriminatory intent." Id. at 863. Addressing the "effect" prong, the Court stated: "Even assuming that the Armstrong requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the record

of the decisionmakers in respondent's case), raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants." Id. at 864 (emphasis in original). Moreover, the Court repeated its concern that compelling the production of information "threatens the 'performance of a core executive constitutional function.'" Id.[1]

In the present case, neither the defense nor the Court has suggested that the government's § 851 charging decision was motivated by an unconstitutional purpose. Indeed, the defense has made no claim at all in this area and has not requested any discovery. The Court issued its order sua sponte, apparently to explore whether the government's § 851 filing decisions produce unwarranted sentencing disparities that might be taken into account in the post-Booker analysis under 18 U.S.C. § 3553. (Tr. 2-7.) Respectfully, in light of Armstrong and Bass, this is an insufficient basis for compelling the government to produce the information in question, even putting to one side the substantial attorney-client, deliberative-process and work-product issues that would arise if the order were given its broadest interpretation. See, e.g., In re United States, 441 F.3d 44, 63 (1st Cir.), cert. denied, 127 S. Ct. 288 (2006); In re United States, 398 F.3d 615,

---

[1] See also United States v. Thorpe, 471 F.3d 652, 657-666 (6th Cir. 2006) (applying two-prong Armstrong and Bass test); In re United States, 397 F.3d 274, 282-87 (5th Cir.) (per curiam) (applying Armstrong and Bass and striking down order requiring government to produce evidence concerning its capital-charging practices), cert. denied, 544 U.S. 911 (2005).

618 (7th Cir. 2005) (per curiam).

There is an alternative basis for reconsidering the order. Assuming arguendo that the Court may order discovery in the absence of any evidence (or even a claim) of improper motive, to investigate the possible merits of a post-Booker sentencing theory that is not based on any constitutional provision, the underlying theory at issue here -- that the government's § 851 charging decisions may create "unwarranted sentence disparities" under § 3553(a)(6) -- is flawed as a matter of law, as now explained. Because the information that the Court has ordered the government to produce does not advance the § 3553 inquiry, the Court should revisit the order for this additional reason, quite apart from the Armstrong and Bass holdings.

Prior to Booker, the Supreme Court rejected a similar legal theory:

> As we understand it, [the defense] argument posits that if the Government provides notice under § 851(a)(1) to one defendant, but not to another, the resulting difference in the maximum possible term is an "unwarranted disparity." Insofar as prosecutors, as a practical matter, may be able to determine whether a particular defendant will be subject to the enhanced statutory maximum, any such discretion would be similar to the discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect. Such discretion is an integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors. [Citing Armstrong]. Any disparity in the maximum statutory penalties between defendants who do and those who do not

> receive the notice is a foreseeable – but hardly improper – consequence of the statutory notice requirement.

United States v. LaBonte, 520 U.S. 751, 761-62 (1997); see also United States v. Roberson, No. 06-1121, 2007 WL 102989, at *3 (7th Cir. Jan. 17, 2007); United States v. Williams, 456 F.3d 1353, 1369-70 (11th Cir. 2006); United States v. Jensen, 425 F.3d 698, 707 (9th Cir. 2005), cert. denied, 126 S. Ct. 1664 (2006).

Post-Booker decisions of the First Circuit are instructive, if not dispositive. The First Circuit has held that the 100:1 crack/powder sentencing ratio does not result in an unwarranted sentencing disparity, in part because that ratio is the product of an express Congressional decision. United States v. Pho, 433 F.3d 53, 64 (1st Cir. 2006). It has also reasoned that "any disparity caused by application of the career offender guideline is one that results from the policy choices made by Congress and implemented by the Sentencing Commission." United States v. Caraballo, 447 F.3d 26, 27-28 (1st Cir.) (per curiam), cert. denied, 127 S. Ct. 298 (2006).[2]

---

[2] See also United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) (observing that disparities created by "fast-track" program "are the result of a congressional choice made for prudential reasons, implicitly qualifying the general aim of equality," and noting that "[w]hether it would even be permissible to give a lower sentence on the ground sought is itself an open question"); United States v. Martinez-Flores, 428 F.3d 22, 30 n.3 (1st Cir. 2005) ("It is arguable that even post-Booker, it would never be reasonable to depart downward based on disparities between fast-track and non-fast-track jurisdictions given Congress' clear (if implied) statement in the PROTECT Act

Likewise, Congress necessarily recognized in enacting § 851 that sentences of similarly-situated defendants will vary dramatically based merely on the filing or non-filing of the requisite information. Because such disparities are an inevitable result of that Congressional choice, they cannot be described as "unwarranted" for purposes of § 3553(a)(6), even if some may view them as "unwarranted" on generalized policy or fairness grounds. Moreover, it bears noting that even if a policy-driven approach is employed, it is not obvious that the proper solution is to lower the sentences of defendants who receive § 851 enhancements; "[i]f the Government does not file the notice . . . the lower sentencing range will be applied even though the defendant may otherwise be eligible for an increased penalty," LaBonte, 520 U.S. at 754 n.1, and thus some may feel that it is more (or equally) sensible to raise the sentences of defendants who dodge the notice. The bottom line is that, instead of focusing on the government's reasons for filing § 851 informations in individual cases or groups of cases, or canvassing the docket to compare cases where notices were filed with those where they were not filed, the more appropriate course is to conduct a fact-intensive assessment of the individual circumstances of this particular case. See United States v. Thurston, 456 F.3d 211, 218 (1st Cir. 2006); Pho, 433 F.3d at 62.

---

provision that such disparities are acceptable"), cert. denied, 126 S. Ct. 1449 (2006).

An example illustrates the point. Suppose that the government provided the information ordered and that it revealed a discernable pattern: defendants who plead guilty and cooperate with the government are far less likely to receive a § 851 notice than defendants who go to trial or who plead guilty in the absence of a plea agreement. Suppose further that, in individual cases, there was evidence that the prosecutor informed the defendant that if he did not accept a proposed plea agreement, the prosecutor would file a § 851 notice. The case law makes plain that neither scenario would provide any cause for concern, much less a valid basis for exercising sentencing discretion in a particular way. See United States v. Yeje-Cabrera, 430 F.3d 1, 23-27 (1st Cir. 2005) (surveying relevant Supreme Court authority). What, then, would be gained from a review of the requested data?

Finally, the government notes that it will be more burdensome to produce the ordered information than the Court may have anticipated. In the two years since Booker was decided, this office has prosecuted approximately 100 defendants on drug charges. The LIONS database used by this office to track cases does not indicate whether a § 851 information was filed. The database also does not list a defendant's prior convictions, much less indicate whether particular convictions might have qualified as § 851 predicates. Quite often, the database does not even indicate the drug weight/type. Thus, to ensure the accuracy of any report to

the Court, the government would have to pull roughly 100 case files and examine underlying documents such as the indictment, Presentence Report, and Judgment of Conviction. As part of this court-mandated review, the government would have to examine the prior convictions listed in each Presentence Report and then determine whether one or more of them might have qualified as a § 851 predicate. This aspect of the review alone would be extraordinarily time-consuming. Moreover, any such retrospective analysis of prior convictions would have a subjective component, since it is not always clear from the Presentence Report's description whether a particular crime qualifies as a "prior conviction for a felony drug offense [which] has become final" for purposes of 21 U.S.C. § 841.[3]

For the above reasons, although the government has provided the Court with the memorandum dated September 22, 2003, it asks the Court to reconsider the balance of its order.

---

[3] In some cases, the Presentence Report reveals prior convictions that the government was unaware of during the window of time in which it normally makes its § 851 filing decision. Thus, it could be potentially misleading to use the Presentence Reports in calculating the number of cases in which the government could have, but did not, file § 851 notices.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Donald C. Lockhart

DONALD C. LOCKHART
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
401-709-5000
401-709-5001 (fax)
donald.lockhart2@usdoj.gov

**CERTIFICATE OF SERVICE**

On this 24th day of January, 2007, I caused the within "Government's Memorandum in Support of Motion to Reconsider January 18, 2007 Order" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Edward C. Roy, Esquire
Federal Public Defender's Office
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

Notification by first class mail, postage prepaid:

United States Probation Office
2 Exchange Terrace, 2nd Floor
Providence, Rhode Island 02903.

/s/ Donald C. Lockhart

DONALD C. LOCKHART
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
401-709-5000
401-709-5001 (fax)
donald.lockhart2@usdoj.gov