UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

United States of America
v.
Terrence Greene

CR No. 06-056 S

Order on Motion of Government to Reconsider January 18, 2007 Order

WILLIAM E. SMITH, District Judge.

Before the Court is the government's Motion for Reconsideration of the Court's January 18, 2007 Order which required the government to provide information regarding the use of so-called "§ 851 filings."[1] See 21 U.S.C. § 851. In an Order issued from the bench, the Court directed the government to provide information regarding its filing of § 851 enhancements from the date of United States v. Booker, 543 U.S. 220 (2005) (January 12, 2005) to the present.

Section 851 effectively allows the Government to access the enhanced penalty provisions of 21 U.S.C. § 841(b)(1)(A) in situations where the defendant has one or more prior felony drug convictions. Pursuant to § 851, the U.S. Attorney must file a written information stating the prior conviction relied upon. The

[1] On February 5, 2007, the Court stayed its Order until further notice in light of the fact that most of the requested data had been produced by the Office of Probation, and because the court desired some additional time to spell out its ruling on the government's Motion in more detail.

defendant may challenge the use of any prior convictions that occurred within the last five years. See 21 U.S.C. § 851(b)-(c) and (e). Once the information is filed, the sentencing court is required to impose the enhanced mandatory minimum sentence.

The impact of a § 851 filing, however, is not limited to an increase in the mandatory minimum; it also increases the statutory maximum which, in turn, has an impact on the guideline calculation for defendants categorized as career offenders because it ratchets up the defendants' offense level under Guideline § 4B1.1(b)(A). Simply put, when subject to a § 851, a defendant's guideline range is adjusted upward depending upon the maximum term available under the statute. Where the maximum is life, the offense level moves from whatever it was initially calculated to be to Level 37. After adjustments for acceptance of responsibility and calculation of criminal history, a new advisory guideline range is determined. The impact can be dramatic.

Defendant Greene is a career offender with a criminal history category of VI. The Office of Probation originally calculated the offense level as 32. Pursuant to Guideline § 4B1.1(b)(A), the Defendant's offense level was adjusted to level 34 because the maximum statutory penalty for his offense was 40 years (with a five year minimum). However, because of the § 851, the offense level was increased from 34 to 37 because the statutory maximum increased to life. Had the offense level not migrated from level 34 to level 37, the Defendant, after a 3 point reduction for acceptance of responsibility, would have had an adjusted offense level of 31.

Because of the filing of the § 851, however, his adjusted offense level, after the 3 point reduction, is level 34. The resulting guideline calculation for Defendant Greene at level 34, category VI is 262 to 327 months of imprisonment. At level 31, his guideline range would have been 188 months to 235 months. The difference at the low end is 74 months.

The difference is even more marked in the context of Defendant Andrade, who was scheduled to be sentenced after Greene.[2] In that case, the Defendant's base offense level was 28. Defendant Andrade, like Greene, has a criminal history category of VI and is a career offender. But for his career offender status, the Defendant's offense level would be 25 after a three point reduction for acceptance of responsibility. Level 25/category VI yields a guideline range of 110 to 137 months. As a career offender (level 34) his range would be 188-235; however, because of the filing of the § 851 the Defendant's guideline range is now 262-327 months. The increase resulting from his career offender status and the § 851 filing at the low-end of the range is 152 months (142 months from the mandatory minimum); the § 851 accounts for a 74 months increase.

As the government points out in its Motion for Reconsideration, the Court ordered that the government produce for this two-year period information concerning (1) "How many cases and in which cases has the Government filed § 851s"; (2) "How many cases, and which ones, has the government had the ability to file

[2]United States v. Andrade, CR-06-0089S.

§ 851s, but chose not to"; (3) With respect to both categories of cases, "the nature of those cases, the types of drugs involved, the quantities, etc.," and whether there were "any plea agreements or not in those cases"; and (4) "any policy directives or reasons for the filing or the decision not to file the § 851s." Tr. at 6.

The government objects to the Court's Order for two reasons: first, the government contends that the Order, and particularly the last portion of it, could be read as requiring the government to disclose more than general policy directives that serve to guide prosecutorial decisions about whether to file § 851s, as well as the particular reasons why the government has filed or not filed a § 851 in a specific case or a group of cases. The government cites to additional comments made by the Court on the record which would support this reading of the Order. Essentially, the government contends that this request encroaches upon the government's core executive function to prosecute crimes, may require the government to disclose prosecutorial strategy, and privileged information could impair the performance of prosecutors and would divert precious prosecutorial resources inappropriately. The government relies primarily upon United States v. Armstrong, 517 U.S. 456 (1996).

Second, the government contends that regardless of whether the Court's request for § 851 information is appropriate in light of Armstrong and other cases cited, the information cannot possibly lead to any valid use in connection with the Court's role to sentence in accordance with 18 U.S.C. § 3553. Moreover, the

government's contention is that examination of "unwarranted sentencing disparities" under § 3553(a)(6) may not include disparities which result from decisions of prosecutors to file § 851 enhancements.

Predictably, Defendant objects to the government's Motion for Reconsideration. In his Objection, the Defendant concedes that he has made no allegation at this point of racial or other discrimination of the filing of § 851s, an allegation that could unlock the doors to enable review of the government's decision to file a § 851. See Armstrong, 517 U.S. at 463. However, Defendant contends it is appropriate for the Court to inquire regarding the government's practices with respect to filing § 851s to determine if an unwarranted disparity exists under § 3553(a)(6). Moreover, the Defendant contends that it has been attempting to compile the information requested from probation reports, as had the Office of Probation, and points out that the resources these offices have available to devote to this effort are far less than what the government has available.

The Court has given serious consideration to the government's Motion for Reconsideration. While not in full agreement with all of the government's arguments, the Court believes much of what the government contends is correct, and therefore will grant the Motion for Reconsideration as set forth below. The Court will explain briefly.

The government relies primarily upon the decision of the United States Supreme Court in Armstrong, for its contention that

the Court may not require disclosure of the information. While Armstrong was decided in the context of an argument by the Defendant of selective prosecution, not in the context of sentencing, its central tenet applies here: a court should not and may not "insist the prosecutors reveal deliberative or pre-decisional materials" but must instead rely upon outputs. In re United States, 441 F.3d 44, 62 (1st Cir. 2006) (citing In re United States, 398 F.3d 615, 618 (7th Cir. 2005)); see also Fed. R. Crim. P. 16(a)(2) ("Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.") Consequently, as the Seventh Circuit has persuasively stated, albeit in the context of a False Claims Act matter:

> the United States Attorney is not answerable to a Judge for the deliberations among his staff. The intra-office conversations and memoranda that the judge wants to see are covered by multiple privileges . . . [a] federal court must evaluate lawyers' final submissions-that is, must review outputs rather than inputs. How the United States reaches its litigating positions, who said what to whom within the prosecutor's office, and so on, are for the Attorney General and the President to evaluate. The judicial branch is limited to assessing a counsel's public deeds.

In re United States, 398 F.3d at 618.

Thus, the Court agrees with the government that if its Order of January 18, 2007 is interpreted as requiring the government to disclose information which is protected from disclosure, it could arguably be over-broad. However, the Court does not fully agree with the government's alternative argument that under no

circumstances could information derived regarding the filings of § 851 enhancements, and the potential disparities created by such filings, ever be relevant.

In the circumstances presented by these Defendants (non-safety valve eligible defendants), the Court has no discretion to sentence below the statutory mandatory minimum except pursuant to a motion by the government under § 3553(e). Thus, the impact of an § 851 enhancement on the statutory mandatory minimum is unquestionably beyond this Court's discretion to act, regardless of how the Court may feel about its appropriateness. See United States v. Gregg, 451 F.3d 930, 937 (8th Cir. 2006); United States v. Shelton, 410 F.3d 1325, 1333 n.10 (11th Cir. 2005). However, the impact of the § 851 filing on the guidelines calculation in any particular case is at least arguably a matter within this Court's discretion to review under United States v. Booker, 543 U.S. 220 (2005).

The statutory command of § 3553(a)(6) is plain. The statute requires that the Court consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." It is therefore incumbent on this Court to examine any and all potential disparities that may exist. As the Court has outlined from the bench, the filing of the § 851 enhancement can and does result in similarly situated defendants receiving guideline calculations that vary substantially. The fact that such a disparity in potential sentences may exist as to identical or similarly situated defendants does not, by itself, mean that it is an unwarranted

disparity, but it does raise a threshold question for consideration under the mandate of § 3553(a)(6).

Indeed, the First Circuit Court of Appeals has implied that a sentencing court may consider extremely divergent sentences of this type as part of the § 3553 analysis. In United States v. Thurston, the court stated that "a sentencing court could plausibly conclude that extremely divergent sentences would undermine the accepted notion that similar conduct should be punished in a somewhat similar manner." 456 F.3d 211, 220 (1st Cir. 2006); see also United States v. Saez, 444 F.3d 15, 19 (1st Cir. 2006) (noting in dicta that "if the same judge sentences two identically situated defendants to substantially different terms, some explanation may well be required; uniformity aside, the basic requirement of rationality remains.").

The importance of this inquiry is highlighted by Thurston's holding that the reasonableness of a below guideline sentence will be reviewed on a sliding scale:

> The farther the judge's sentence departs from the Guidelines sentence the more compelling the justification based on the factors in § 3553(a) that the judge must offer . . . .

Id. at 215 (quoting United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005)). Consequently, this Court is now required, per Thurston and United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006), when justifying its sentence, to provide greater justification as the variance from the guideline range increases. The import of this rule is obvious.

The court is mindful of the holding in United States v. LaBonte, 520 U.S. 751 (1997), which the government cites for support. There, the Supreme Court rejected an argument that filing of an § 851 enhancement could result in unwarranted disparities under § 3553(a)(6). A defendant challenged the imposition of a stiff sentence under the guideline's career offender provision, § 4B1.1. He contended that the language of the Congressional directive, 28 U.S.C. 944(b)-(n) requiring the Commission to ensure that guidelines specify a sentence "at or near the statutory maximum term authorized" did not mean the sentence as potentionally enhanced by the filing of an § 851 enhancement. The Court rejected this argument holding as follows:

> Insofar as prosecutors, as a practical matter, may be able to determine whether a particular defendant will be subject to the enhanced statutory maximum, any such discretion would be similar to the discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect. Such discretion is an integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors. See United States v. Armstrong, 517 U.S. 456, 464-465 (1996); Wayte v. United States, 470 U.S. 598, 607 (1985). Any disparity in the maximum statutory penalties between defendants who do and those who do not receive the notice is a foreseeable - but hardly improper - consequence of the statutory notice requirement.

Id. at 762.

The holding of LaBonte was, of course, pre-Booker. However, a number of Courts of Appeal have cited LaBonte in the context of post-Booker challenges to the use of § 851 (or similar) enhancements. See United States v. Roberson, __ F.3d __, 2007 WL 102989 (7th Cir. Jan. 17, 2007) (addressing the use of § 924(c)(1)

enhancements); United States v. Arias, __ F.3d __, 2006 WL 3635397 (11th Cir. Dec. 13, 2006) (rejecting a due process challenge to the use of § 851 enhancements and rejecting the argument that the district court was not bound by the statutory minimum sentence); United States v. Jensen, 425 F.3d 698 (9th Cir. 2006) (rejecting an argument that the filing of a § 851 violates the separation of powers and non-delegation doctrine). None of these cases, however, have addressed the question of whether a disparity created by the filing/non-filing of § 851s may assist the court in explaining its conclusions with respect to how each of the enumerated § 3553(a) factors plays out in a specific case.

Disparity in sentences between similar defendants is a common thread that runs through the other § 3553(a) factors. If a sentencing court is barred from considering such disparities, and its causes, then how is a sentencing court to evaluate effectively the § 3553(a) factors? Consider a hypothetical example: Defendant A and Defendant B are in most critical respects nearly identical: they are convicted of selling approximately the same quantity of the same drug; they have the same criminal history category and are career offenders, with similar prior offenses; and they come from similar backgrounds with similar educations and family experiences. Now assume Defendant A receives a guideline range of 188 to 235 months, and Defendant B, pursuant to the filing of a § 851, is assessed a guideline range of 262-327 months with a mandatory minimum of 10 years. If the court has concluded for Defendant A that a below-guideline sentence of 160 months (18 months below the

low-end of 188) is sufficient, but not greater than necessary to achieve all of the goals of sentencing outlined in § 3553(a) (consideration for the nature of the offense; the history of the defendant; the need for deterrence and protection on the public, etc.) then the 102-month disparity between Defendant A's sentence and Defendant B's low-end guideline calculation of 262 months is arguably a prima facie showing that 262 months is greater than necessary to achieve the § 3553(a) goals of sentencing. If the government is correct that consideration of the disparity created by the § 851 enhancement must be taken out of the equation, then how is the sentencing judge to assess the § 3553(a) factors and satisfy the demand of Thurston if he decides to sentence Defendant B to a similar non-guidelines sentence as that received by Defendant A?

Defendants may face an uphill trek to persuade this court that such disparities can be placed into the mix in light of LaBonte and its adoption post-Booker. And this court does not suggest any outcome or preference by virtue of this inquiry. On the other hand, it is hard to imagine how the Court can avoid consideration of differences between and among similar cases. See United States v. Quinn, __ F. Supp. 2d __, 2007 WL 330132 (D.Mass. Feb. 6, 2007). The court believes it has an obligation to consider all of these issues and that they cannot be ignored in the larger quest to administer the sentencing function with fairness.

Having concluded that the government's motion for reconsideration of the court's January 18, 2007 order is well

founded and having explained the reasons for the court's interest in this material, the court revises its order as follows: The Government and the Defendant are encouraged (but not required) to examine sentencings since the Supreme Court's decision in Booker (January 12, 2005) and submit information relating to the filing and/or non-filing of § 851 enhancements. To the extent either party wishes to argue as to what conclusions may be drawn from any information compiled by the Defendant and/or the government, applicable to this sentencing the court will receive briefing from the parties. The court is particularly interested in situations in which similar defendants have been treated either consistently or inconsistently with respect to filings of a § 851 enhancements and the reasons, if known, as to why a particular defendant may have been treated differently with respect to such filing (and specifically whether the reason relates in some way to one of the factors under § 3553(a)). The court will allow a period of thirty days from the date of the Order for the parties to compile information and submit briefing with respect to this issue after which sentencings will be scheduled.

It is so Ordered.

WILLIAM E. SMITH
United States District Judge

DATE: 2/13/07