IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COPY

| | |
|---|---|
| * * * * * * * * * * * * | * CRIMINAL ACTION |
| USA | * 06-56 |
| | * |
| VS. | * JANUARY 18, 2007 |
| | * |
| TERRENCE GREENE | * PROVIDENCE, RI |
| * * * * * * * * * * * * | * |

HEARD BEFORE THE HONORABLE WILLIAM E. SMITH

DISTRICT JUDGE

(SENTENCING)

APPEARANCES:

FOR THE GOVERNMENT: SANDRA BECKNER, ATTY.
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT: EDWARD C. ROY, ESQ.
Federal Defender's Office
10 Weybosset Street
Providence, RI 02903

Court Reporter: Anne M. Clayton, RPR
One Exchange Terrace
Providence, RI 02903

Proceeding reported and produced by computer-aided stenography

THE COURT: Good morning. We're here this morning in the matter of the United States versus Terrence Greene. We're scheduled for sentencing this morning.

Let's begin by having counsel identify themselves for the record, please.

MS. BECKNER: Sandra Beckner for the United States.

MR. ROY: Good morning, your Honor. Edward C. Roy here on behalf of the defendant, Terrence Greene.

THE COURT: Thank you. Before we get started this morning, there's an issue I'd like to discuss, and I think it's probably going to require that I end up postponing the sentencing this morning, because I want some additional information before we go forward with the sentencing.

So let me describe to you what the issue is. I'll hear your comments, if you wish, and then I'll tell you what I'd like you to do.

As I have looked over the presentence report in this case, and as I have looked over some other sentencings that are scheduled for this week, one thing that has sort of struck me is the impact of the filing of the 851 in this case, and in another case, United States versus Andrade, which is scheduled for

sentencing tomorrow.

Now, I've discussed this with the other judges just briefly, but the filing of these 851's is, I think, a fairly new phenomenon, and I'm not quite sure what the source of it is. It appears that in this case there was no plea agreement; is that right?

MR. ROY: There was a plea agreement, your Honor.

THE COURT: There was a plea agreement in this case?

MR. ROY: I'm sorry, your Honor. There wasn't.

THE COURT: I don't think there was. And I think that's also the case in the other matter, the Andrade matter.

So I can speculate that perhaps the filing of the 851 relates to the lack of a plea agreement, but that's only speculation on my part.

So anyway, as I kind of thought about this and reflected on it, it has occurred to me that the filing of the 851's in these cases creates a very substantial difference in the potential sentence or the guideline range, the advisory guideline range that I will have to work from. I think, in this case, the filing of the 851 means a 74-month difference in the bottom of the range applicable to the defendant. If this defendant

did not have an 851 filed, the range would be 188 to 235. With the 851, the range is 262 to 327.

Now, those ranges, both those ranges are very substantial sentences. But what it raises is a question, I think, of whether a disparity is being created in sentences of a like kind, in cases of a like kind, that is, cases involving crack cocaine or cases involving cocaine or cases involving drugs by virtue of the filing of the 851.

So what we may have is a defendant with exactly the same profile as this defendant, or a very similar profile, who is at a guideline range of 188 to 235 and then another defendant, this one, and maybe Mr. Andrade tomorrow, at a 262 to 327 range.

Now, that difference may be perfectly warranted or it may not be, but it's not really possible to tell that from the information that I have that's in the presentence report. There may be good reasons why this defendant should have a sentence, advisory guideline range of that amount and another defendant with a similar profile has a different one. I don't know. But I can't tell that from the information I have.

One of the requirements of Section 3553 is that sentencing should avoid unwarranted disparities in sentencing between similarly situated defendants. A

warranted disparity would be fine, but an unwarranted disparity, obviously, should be avoided.

Now, I think this is particularly important, because in light of the precedence of the Court of Appeals in the last couple of years since Booker, we know that the establishment of the advisory guideline range is a very critical function of the district court. And once you establish that advisory guideline range, while the Court retains the ability to vary from that guideline range, the degree of variance is judged on a kind of sliding scale under Thurston.

So the further away one gets from the -- the further away one gets from the advisory guideline range, the more likely it is the Court of Appeals may find that sentence to be unreasonable.

So if I were to feel that, and as counsel is going to argue, that I should impose a sentence that is below guidelines, and if I were to agree with that, and if I were to feel that this defendant is one who should be looked at more in the range of the 188 to 235, that's a very substantial downward variance. That's a 74-month variance.

So I think I need to be able to justify that very explicitly, if I'm going to do it. I'm not saying I'm going to do that, but I think that's what I'm

required to do.

So all of this is kind of a long build up to telling you that I want more information from the Government. I'm going to require the Government to provide to me an overview of the use of section -- of these 851 filings from the point of Booker to the present.

What I want to know is how many cases and which cases has the Government filed Section 851's; how many cases, and which ones, has the Government had the ability to file 851's, but chose not to. I want to know the nature of those cases, the types of drugs involved, the quantities, et cetera. I want to know if there are any plea agreements or not in those cases, and I want to know if there are any policy directives or reasons for the filing or decision not to file the 851's. And then, finally, with respect to this case and with respect to the Andrade case, which is scheduled for tomorrow, which I'm also going to postpone, I would like the Government and also the defense to tell me why the additional time is justified, which results in the filing of the 851, as this defendant compares to other similarly situated defendants.

I don't want to hear that the Government has a

right to do it, so we can just do it. I know that, but I want to know what distinguishes one defendant from another defendant when it comes to the filing of these 851's. What's the qualitative distinction or judgment that the Government is making when it decides that one defendant is going to get an 851 and another defendant is not.

Now, I don't want to imply, and I don't want anybody to read this as a disapproval of the filing of these 851's. It's just I want to know what's behind it all, so that I can make the judgment that I think I'm required to make about whether the sentence disparity that is arguably created here between similarly situated defendants is a warranted disparity or not. All right?

So I've laid all that out. Do either of you have any questions? Ms. Beckner, do you, specifically, have any questions?

MS. BECKNER: I do, your Honor, since I'm the one tasked with gathering this information. As the Court's aware, I've only practiced in this district since June 1st. The Court asked me to gather information on 851's for multiple years.

THE COURT: Two years.

MS. BECKNER: I'll be quite honest. I know we

have certain databases available to us. I don't quite know how to utilize those. I'll certainly check, but my guess is something like this is going to take a very long time.

THE COURT: I don't think it will take that long. I mean, I would think that, you know, it's not -- I would imagine you've got some databases that allow you to pull up, you know, when 851's have been filed and when not. I think Probation might be able to assist a little bit on this. I've asked Probation to gather some information as well, they work for the Court.

I know you're going to have to go back and talk to your superiors and so forth. I'm aware that you're new on the scene, and I'll give you whatever time you need to do it within reason, you know, a month or two or whatever. You know, this case involves a substantial sentence regardless of what the outcome of this is, and a month or two delay is not going to matter that much.

MS. BECKNER: Okay. I will -- I'll go back and start checking with the appropriate people, and perhaps I could even call maybe the calendar clerk and give her an estimation, like a good faith estimation of a reasonable amount of time and the Court can either

accept that estimation or not, but because I'm not real familiar with the databases, it tends to be something input by the staff, and I've never really used the databases so I can't really feel like I can give an estimate of how much time it would take at this point.

THE COURT: Right. I understand. If need be, we'll have a status conference in the case in a week or two once you figure it out. I have a feeling the federal defender's office, they do a majority of these case, not all of them, but they probably have access to a lot of this information as well. They may want to take -- I'm not in any way prohibiting you from -- in fact, I want you to file whatever you think you should file in terms of advocacy with respect to this.

MR. ROY: If I could add briefly, your Honor. I'll pledge that my office will work with the U.S. Attorney's Office to try to help gather that information. I know t hawe can, through our database and our computer system, we can access all drug cases based on the statute. We input them based on statute. And I'll have Sandy, our assistant, get working on that, and we can work with the U.S. Attorney's Office to try to provide that in an expeditious fashion for the Court.

THE COURT: I'm also interested -- I'm not going

to impose this either of you as a task, because I think it's going further than need be and the data may be available from the Sentencing Commission so I intend to have someone work on this with the Sentencing Commission, but I'm interested in the statistical information on this issue nationwide, if there is that kind of information available.

And so if either of you have access to that type of information, then I'd be interested in seeing it. It could be through your various associations, somebody is out there gathering up that kind of information.

MR. ROY: I'm actually working on a similar issue, your Honor, that I haven't had a chance to but I haven't had a chance to put it all together, but Ms. McElroy, Mr. Fitzgerald and I are working on a related issue, and I've been trying to access nationally and I do -- it's hard to find, but I'll endeavor -- there are people I can talk to down in Washington that might be able to help gather that.

THE COURT: Okay.

MR. ROY: Thank you.

THE COURT: Ms. Beckner, anything else?

MS. BECKNER: Not from the Government, your Honor.

THE COURT: All right. Then for a control date

on this, maybe do you think 30 days, or is that not enough?

MS. BECKNER: I think that would be a good starting point, your Honor, and I might have some more information as far as timing.

THE COURT: All right. Then why don't we schedule it for about a month out.

Why don't we put this down for Friday, the 23rd of February.

Actually, let's make that one week further. Let's do it Thursday, March 1st. That earlier week is Presidents' week. Sometimes people have vacations scheduled and so forth. We'll do that.

All right. Are you both on the Andrade case as well?

MR. ROY: Mr. Fitzgerald is representing Mr. Andrade, your Honor.

MR. FITZGERALD: Mr. Leavey is on that.

THE COURT: Mr. Leavey? Would you let him know the information I'm asking for here is directly relevant to the Andrade matter, and I'm going to postpone the Andrade sentencing as well. If you would let him know that, I'd appreciate it.

MS. BECKNER: Yes, your Honor.

MR. FITZGERALD: Your Honor, if I could, do you

want to put that for a status conference at the same time?

THE COURT: I think we should put that down for the same date, just to control it. March 1st.

MR. FITZGERALD: Thank you.

THE COURT: All right. Well, if there's nothing further -- do you have anything?

PROBATION OFFICER: No, I don't, your Honor.

THE COURT: Anybody else have anything?

MR. ROY: Nothing, your Honor. Thank you.

THE COURT: Very well then. We'll be in recess.

(Court concluded at 9:30 a.m.)

# C E R T I F I C A T I O N

I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Anne M. Clayton

Anne M. Clayton, RPR

Jan. 19, 2007

Date